**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**WEN HSUE CHANG, Defendant—
Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Jian Rong Tan, Defendant—Appellant.**

**Nos. 05–50345, 05–50357.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 7, 2006.*

Filed June 20, 2006.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Becky S. Walker, Esq., Beong–Soo Kim, Esq., USLA—Office of the U.S. Attorney, Los Angeles, CA, for Plaintiffs–Appellees.

Robert Ramsey, Jr., Esq., Ramsey & Price, Ellen M. Barry, Esq., Law Offices of Ellen M. Barry, Los Angeles, CA, for Defendants–Appellants.

Before: THOMAS and GOULD, Circuit Judges, and SCHWARZER,** District Judge.

## MEMORANDUM ***

Wen Chang and Jian Tan appeal the district court's denial of their motions for judgments of acquittal, brought under Federal Rule of Criminal Procedure 29.[1] Chang and Tan each argue that the evidence presented at their joint trial was insufficient to warrant the jury's verdicts, which found each of them guilty of conspiracy, bringing illegal aliens to the United States for private financial gain, and concealing illegal aliens in the United States.

Acting on a tip, Immigration and Customs Enforcement (ICE) agents discovered Chang, Tan, and seventeen other Chinese nationals hiding inside of a forty-foot-long, wooden cargo container that had been shipped by boat from Hong Kong to the Port of Los Angeles.[2] At trial, the government alleged that Chang and Tan had agreed to participate in a human-smuggling conspiracy, and to supervise the aliens found with them during the voyage to the United States, in exchange for a discount from the smuggling fee that the other aliens promised to pay.

---

** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. We review de novo a district court's denial of a motion for a judgment of acquittal. *See United States v. Carranza,* 289 F.3d 634, 641 (9th Cir.2002). We may not reverse the district court if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

2. Because the parties are familiar with the facts and the procedural history underlying this appeal, we mention them only where necessary to explain our decision.

■ Seven witnesses testified for the government: five of the aliens who traveled with Chang and Tan, and two ICE agents, one of whom the district court certified as an expert witness. These witnesses testified that a man named "Ah Heng" organized a plan to smuggle Chinese nationals into the United States for $40,000 per person; that Chang and Tan accompanied Ah Heng to the Hong Kong hotel where the aliens stayed before leaving for the United States, that Chang and Tan paid for the aliens' hotel room and for at least some of their meals in Hong Kong; that Tan asked each alien for his family's telephone number and address to facilitate collecting the smuggling fee; that Chang helped to load food into the container before the other aliens entered it; that Chang and Tan distributed food to the other aliens during the voyage; that the other aliens could not get food during the trip without Chang's or Tan's permission; that Chang and Tan had flashlights, hacksaws, and other tools necessary to exit the container; that they knew the container's final destination inside the United States; that they told the other aliens to be quiet to avoid detection; and that they refused to answer questions posed by other aliens about how much they had promised to pay for passage to the United States, but that Tan said that he had promised to pay "[v]ery little." The government's expert, more specifically, testified that a person who wanted to be smuggled into the United States could earn a discount from the standard $40,000 smuggling fee if the person agreed to work as an "enforcer" during the journey. The expert testified that an enforcer would be responsible for distributing food and water during the trip and for making sure that the other aliens did not draw attention to the container in which they were hiding by fighting or by making loud noise. The expert also testified that smuggling conspiracies typically paid enforcers in the form of a discount from the smuggling fee, rather than in cash.

Viewing this evidence in the light most favorable to the government, a rational trier of fact could conclude beyond a reasonable doubt that Chang and Tan functioned in the enforcer role described by the government's expert, that they agreed to accomplish illegal objectives, namely smuggling illegal aliens into the United States and concealing them there, and that they acted to further these illegal objectives with the criminal intent necessary to commit the underlying offenses. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *United States v. Pemberton*, 853 F.2d 730, 733 (9th Cir.1988) (per curiam).

■ The evidence presented at trial was also sufficient to warrant the jury's conclusion that Chang and Tan helped illegal immigrants enter the United States, knowing or recklessly disregarding that the immigrants were not authorized to do so, and that each defendant acted "for the purpose of commercial advantage or private financial gain." *See* 8 U.S.C. § 1324(a)(2)(B)(ii). A rational trier of fact could have concluded beyond a reasonable doubt that Chang and Tan agreed to act as enforcers during the voyage to the United States in exchange for a direct private financial gain, namely a discount from the standard $40,000 smuggling fee. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir. 2002); *United States v. Angwin*, 271 F.3d 786, 805 (9th Cir.2001).

■ Finally, a rational trier of fact could have concluded beyond a reasonable doubt that Chang and Tan knew or recklessly disregarded that the other aliens in the container were not authorized to be in the United States, and that Chang and Tan concealed, harbored, or shielded them

from detection by immigration officials. As the government's expert testified, container-smuggling conspiracies employ enforcers to ensure that immigration officials do not discover the illegal immigrants hiding inside a container. The evidence permitted a rational jury's conclusion that such was the case here. Chang and Tan told the other aliens to be quiet, from which a rational trier of fact could infer that they were trying to conceal themselves and the other aliens. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; 8 U.S.C. § 1324(a)(1)(A)(iii).

**AFFIRMED.**

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.